IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARRIN MILLER,<br><br>                    Petitioner,<br><br>          vs.<br><br>MICHAEL KIRKPATRICK,<br>Superintendent, Clinton Correctional<br>Facility,<br><br>                    Respondent. | No. 9:16-cv-00301-JKS<br><br>MEMORANDUM DECISION |

Darrin Miller, a New York state prisoner now represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Miller is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Clinton Correctional Facility. Respondent has answered the Petition, and Miller has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On September 10, 2010, Miller was charged with second-degree attempted murder (Count 1), first-degree criminal use of a firearm (Count 2), two counts of second-degree criminal possession of a weapon (Counts 3, 4), first degree reckless endangerment (Count 5), second-degree menacing (Count 6), and three misdemeanor violations. The charges stemmed from a September 2010 shooting outside of a nightclub.

Prior to trial, the court held a *Sandoval*[1] hearing to address whether the prosecution could question Miller, in the event he testified, about a prior conviction for second-degree attempted robbery where Miller had struck the victim with a semi-automatic pistol and stolen $150 from her. The court ruled that the People were permitted to ask Miller if he had previously been convicted of a felony, but were not able to inquire as to the nature of the conviction or the underlying facts.

On February 22, 2011, Miller proceeded to a jury trial. During that trial, the court indicated that it had received notes from Juror 6 and Juror 7. Juror 6's note indicated that a female observer she believed was Miller's girlfriend "made comments to the jurors in the courtroom and in the hallway when [the jury left] at night." When individually questioned by the court, Juror 6 stated that the observer made comments while court was in session and in reaction to testimony to the effect that the proceedings were a joke, and made comments that the jury was stupid when the jury left at night. Juror 6 stated that the outbursts would have no effect on her ability to decide the case based solely on the evidence and that she could be fair and impartial. Juror 7 clarified that she had not personally heard any comments by the woman and had only overhead Juror 6 reporting the incidents to court staff without specifics. She likewise assured the court that she could decide the case based solely upon the evidence. At the conclusion of that trial, the jury found Miller guilty of Count 4 of the indictment, second-degree

---

[1]     *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974). *Sandoval* is a short-hand reference to the procedure under New York law under which the trial court determines, in advance, whether evidence of prior convictions is admissible in the event that the defendant testifies.

criminal possession of a weapon, but announced that it was deadlocked as to the other felony charges.

The People elected to try Miller a second time.  Prior to that trial, Miller requested that the court address his prior conviction.  At that time, the court was in possession of the People's prior *Sandoval* proffer, but neither party nor the court had a copy of the court's previous oral ruling or had made notation of that ruling.  Looking at the proffer again, the court ruled that the People could inquire into the conviction by asking whether Miller had been convicted of second-degree robbery and whether he had forcibly stolen money from another person.  The court ruled, however, that the prosecution could not mention the presence of a pistol, which it reasoned would be prejudicial to Miller.  The People also moved prior to trial to admit Miller's testimony from the first trial.  Over Miller's objection, the court ruled that the prosecution could read the entirety of Miller's testimony from the first trial into evidence in the second.

At trial, the two members of the nightclub's security staff testified for the People that they observed Miller firing multiple shots from a handgun at a vehicle as it sped out of a parking lot.  The People also called the four police officers who were present when the shooting broke out, as well as several others who arrived later to collect evidence, and a forensic scientist and firearm expert.  The prosecution also entered into evidence the recording of Miller's interview with law enforcement, given after receiving *Miranda* warnings, and Miller's previous testimony from the first trial was read into evidence.  Miller also testified in his own defense that a friend of his was being attacked outside the nightclub and he went to assist that friend, which included wrestling a gun from one individual.  Miller stated that shots were fired at him by a person who left the fight and got into the car.  Miller acknowledged later shooting at the car, but claimed that

he was only trying to scare the car away.  In the first trial, but not the second, Miller testified that

his brother had been shot and that he believed that one of the individuals who had entered the car

was his brother's shooter.

At the end of the third day of the second trial, the county court instructed the jury that

they were not to use the internet to research anything about the trial.  At the conclusion of the

second trial, the jury found Miller guilty of second-degree attempted murder and first-degree

criminal use of a firearm (Counts 1, 2).  The court subsequently sentenced him, as a second

violent felony offender, to concurrent prison terms with an aggregate maximum of 19 years plus

post-release supervision.

Through counsel, Miller appealed his conviction, arguing that: 1) the evidence was

legally insufficient to support his convictions for attempted murder and criminal use of a firearm,

and those guilty verdicts were against the weight of the evidence; 2) the trial court should have

questioned each juror during the first trial as to whether the female observer's conduct would

have an impact on his or her ability to render an impartial verdict; 3) the trial court erred in

admitting in the second trial Miller's testimony from the first trial; 4) the county court's failure

to timely admonish the jury about the prohibition against electronic research deprived Miller of a

fair trial; 5) the trial court abused its discretion during the second trial by failing to adhere to its

*Sandoval* ruling from the first trial; and 6) the county court improperly denied Miller's motion to

dismiss the indictment on the ground that the grand jury proceedings were defective.  On June

12, 2014, the Appellate Division of the New York Supreme Court issued a reasoned opinion

unanimously affirming the judgment against Miller in its entirety.  *People v. Miller*, 987

N.Y.S.2d 501, 505 (N.Y. App. Div. 2014).  Miller sought leave to appeal to the New York Court

of Appeals, which was summarily denied on December 22, 2014. *People v. Miller*, 25 N.E.3d

350, 350 (N.Y. 2014). His conviction became final 90 days later, on March 22, 2015, the

conclusion of the period during which Miller could have sought certiorari review in the United

States Supreme Court. *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001).

Miller then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on

March 10, 2016. *See* 28 U.S.C. § 2244(d)(1)(A). After Respondent answered the Petition,

Miller retained counsel. Counsel moved for permission to file a memorandum of law to

"supplement" Miller's *pro se* Petition. Docket Nos. 13. This Court, by an earlier-assigned

magistrate judge, granted the request, but noted that "this Court will not consider new claims or

theories of relief raised in the memorandum of law that were not raised in the original habeas

petition" unless counsel moved for, and was granted, leave to amend the Petition. Docket No.

14. Miller filed the counseled memorandum of law in support of the Petition and did not

otherwise move to amend the Petition. Docket No. 15. By letter brief, Respondent subsequently

opposed the counseled memorandum to the extent it sought to add claims not raised in the

Petition. Briefing for this case is now complete and before the undersigned judge for

disposition.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Miller argues that his conviction was

unconstitutional because: 1) his convictions for attempted murder and criminal use of a firearm

were against the weight of the evidence and unsupported by legally sufficient evidence; 2) the

trial court erred in admitting into evidence in the second trial Miller's testimony from his first

trial; 3) the trial court did not timely admonish the jury to refrain from researching Miller's case

5

on the internet; and 4) the trial court erred in the second trial by modifying its *Sandoval* ruling from the first trial.  In the counseled memorandum of law in support of the Petition, Miller additionally avers that: 1) the trial court should have individually questioned each juror at Miller's first trial regarding the comments of Miller's girlfriend; and 2) the county court should have granted Miller's motion to dismiss the indictment because the grand jury proceedings were defective.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and

application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536

U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned

decision" by the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*,

229 F.3d 112, 118 (2d Cir. 2000).  Where there is no reasoned decision of the state court

addressing the ground or grounds raised on the merits and no independent state grounds exist for

not addressing those grounds, this Court must decide the issues de novo on the record before it.

*See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d

200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo

standard to a federal claim not reached by the state court).  In so doing, the Court presumes that

the state court decided the claim on the merits and the decision rested on federal grounds.  *See*

*Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see*

*also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman*

interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).  This

Court gives the presumed decision of the state court the same AEDPA deference that it would

give a reasoned decision of the state court.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011)

(rejecting the argument that a summary disposition was not entitled to § 2254(d) deference);

*Jimenez*, 458 F.3d at 145-46.  Under the AEDPA, the state court's findings of fact are presumed

to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28

U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Miller has not replied to Respondent's answer. Although counsel filed a memorandum of law in support of Miller's Petition after the answer was filed, the counseled memorandum of law did not directly address Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

A.    Claims Raised in Counseled Memorandum of Law

As aforementioned, after Respondent answered the Petition, Miller retained counsel. Counsel moved for permission to file a memorandum of law to "supplement" Miller's *pro se* Petition. Docket Nos. 13. This Court, by an earlier-assigned magistrate judge, granted the request, but noted that "this Court will not consider new claims or theories of relief raised in the memorandum of law that were not raised in the original habeas petition" unless counsel moved for, and was granted, leave to amend the Petition. Docket No. 14. Miller filed the counseled memorandum of law in support of the Petition, which, in addition to the claims raised in the Petition, also argued that the trial court should have individually questioned each juror during the first trial as to the girlfriend's comments and that the grand jury proceedings were defective. Docket No. 15. Counsel did not otherwise move to amend the Petition. By letter brief,

Respondent opposed the counseled memorandum to the extent it sought to add claims not raised in the Petition.

The Court does not ordinarily consider grounds raised after the initial Petition. "The petition must (1) specify *all* the grounds for relief available to the petitioner; (2) state the facts supporting each ground; [and] (3) state the relief requested . . . ." Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2012) (emphasis added). To the extent that Miller wishes to raise additional grounds, as the magistrate judge noted in the text order granting counsel's motion to file a memorandum of law, the proper procedure would be to file a motion to amend the petition under Federal Rule of Civil Procedure 15. In this case, however, such motion would futile because the amendment would not relate back to the initial filing and would, therefore, be barred by the one-year limitation period of 28 U.S.C. § 2244(d)(1). *See Mayle v. Felix*, 545 U.S. 644, 655-64 (2005) (discussing at length the interplay between Habeas Rule 2(c) and Fed. R. Civ. R. P. 15). Accordingly, the Court will not address the two additional claims raised in the counseled memorandum of law.

B.    Claims Raised in the Initial *Pro se* Petition

The Court therefore only considers the four claims initially raised in Miller's Petition.

1.    Exhaustion

As Respondent correctly contends, the majority of claims raised in Miller's Petition are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its

prisoners' federal rights.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim.  *Id.* at 365-66.  An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).  To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal.  *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted."  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Here, Miller did not assert in federal constitutional terms before the state courts his claims that the court erred in admitting his testimony from the first trial (Ground 2); the court failed to timely admonish the jurors to refrain from researching Miller's case on the internet (Ground 3); and the court erred in revising its *Sandoval* ruling (Ground 4).  Miller additionally failed to raise his *Sandoval* ruling claim in his leave application to the Court of Appeals. Because it appears that these unexhausted claims are based on the record, they could have been fully raised on direct appeal but were not; consequently, Miller cannot bring a motion to vacate

10

as to such claims.  N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,][a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . .").  Accordingly, they may be deemed exhausted but procedurally defaulted.  *Clark*, 510 F.3d at 390; *Grey*, 933 F.2d at 121.

  2.  Merits

  Moreover, even if Miller had fully exhausted Ground 2-4, he would not be entitled to relief on their merits, as discussed below.  Likewise, the exhausted insufficiency of the evidence claim raised is Ground 1 is similarly without merit, as discussed below.

   i. *Legal Insufficiency/Against the Weight of the Evidence* (Ground 1)

  Miller first argues that his convictions for attempted murder and criminal use of a firearm are against the weight of the evidence and not supported by legally sufficient evidence.

  As an initial matter, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review.  *See McKinnon v. Superintendent*, *Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011).  "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available."  *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted).  "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations."  *Id.*

(citation and internal quotation marks omitted). The Court therefore denies Miller's weight of the evidence claim on that basis.

Miller's insufficiency of the evidence claim, although cognizable on federal habeas review, is also without merit. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546

U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the

state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be

accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory

authority over state judicial proceedings and may intervene only to correct wrongs of

constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith*

*v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In support of his claim, Miller attacks the value of the evidence against him by alleging

that "[t]here is no direct or circumstantial evidence that [he] pointed a loaded weapon or fired a

loaded weapon at any particular person.  No person or object was found to have been struck by

the gun the petitioner was convicted of firing."  The crux of his argument is that firing shots at a

retreating car was insufficient to establish the element of intent to cause the death of another.

However, this Court is precluded from either re-weighing the evidence or assessing the

credibility of witnesses.  *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing

habeas claim because "assessments of the weight of the evidence or the credibility of witnesses

are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of

the particular weight to be accorded to the evidence and the credibility of witnesses).  Under

*Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as

credible by the trier of fact, sufficient to sustain conviction.  *See Schlup v. Delo*, 513 U.S. 298,

330 (1995).  The Appellate Division summarized the following evidence presented at trial:

> Testimony at trial included two of the nightclub's security staff as well as several
> City of Albany police officers, who were on hand because of possible crowd control
> issues when the show at the nightclub ended at 4:00 a.m.  The security staff were
> escorting two unruly patrons off the premises when they were notified of a problem in the
> back parking lot.  As they headed to the back lot, they heard two shots.  The security staff
> then saw a black car speeding away and a man—later identified as [Miller]—firing four

to six shots at the car. The car came within an estimated five feet of defendant and he ran after the car continuing to shoot at it. Although the police officers at the scene were not in a location to see the shooting, they were provided a description of the shooter by security staff and the officers quickly apprehended [Miller], as well as later finding the handgun and other evidence.

After receiving *Miranda* warnings, [Miller] agreed to talk with police, and that interview was recorded and received into evidence at trial. [Miller] claimed that a friend of his was being attacked outside the nightclub and that he went to assist his friend, including wrestling a gun from one individual. He stated that shots were fired at him by a person who left the fight and got into the car. [Miller], who testified at both trials, acknowledged shooting at the car, but claimed he was only trying to scare the car away. There was also evidence that one of the individuals that [Miller] thought was in the car was someone that [Miller] believed had shot his brother a few weeks earlier.

Viewed most favorably to the People, the evidence established that [Miller] repeatedly fired a .45 caliber semiautomatic handgun at the car from a distance as close as five feet. He believed that an occupant of the car had recently shot his brother. His contention that he was merely attempting to scare off the car created a credibility issue for the jury and was undermined by the fact that he ran after the car continuing to fire at it as it left the scene. The proof was legally sufficient to support the jury's verdict.

*Miller*, 987 N.Y.S.2d at 503.

Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Miller bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. For the reasons discussed by the Appellate Division, the record does not compel the conclusion that no rational trier of fact could have found proof that Miller was guilty of attempted murder and criminal use of a firearm, especially considering the double deference owed under *Jackson* and the AEDPA. Miller therefore cannot prevail on his insufficiency of the evidence claim either.

     ii.    *Evidentiary Error*s (Grounds 2, 4)

Miller next alleges that the trial court committed two evidentiary errors. First, he argues that it was reversible error to admit as evidence in the second trial Miller's testimony from the first trial. Second, he contends that the trial court erred during the second trial when it revised its *Sandoval* ruling from the first trial.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). The Supreme Court has further made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling bears the burden of establishing that the evidentiary error deprived the petitioner of due process because it was so pervasive that it denied the petitioner a fundamentally fair trial. *See Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

    a.    Admission of testimony from first trial

The Fifth Amendment's "Self-incrimination Clause provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" *United States v. Balsys*, 524 U.S. 666, 671 (1998) (quoting U.S. CONST., amend. 5). The privilege generally does not disturb "the evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings." *Harrison v. United States*, 392 U.S. 219, 222 (1968). The constitutional privilege and the evidentiary rule are usually compatible because "[a] defendant

15

who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives . . . ." *Id.* The evidentiary rule must yield, however, in the case of "wrongfully obtained" evidence. *Id.* In *Harrison*, the defendant's prior testimony was compelled by the prosecution's introduction of an illegal confession, and was therefore inadmissible notwithstanding the evidentiary rule allowing the use of prior testimony. *Id.* at 222-23.

On direct appeal, the New York Appellate Division rejected Miller's claim that the admission of his prior testimony was error:

> A defendant's testimony at a prior trial is generally admissible, so long as there is a proper evidentiary ground for the testimony and the earlier testimony was not impelled by proof later determined to have been illegally obtained. The People sought to admit [Miller's] testimony since it contained relevant admissions by [Miller]. There was no contention that [Miller's] earlier testimony was in any way the result of improper proof presented by the People in the first trial. [Miller] was primarily concerned that admitting the testimony could reveal to the jury that a prior trial had occurred, and did not otherwise raise specific evidentiary objections to the testimony.

*Miller*, 987 N.Y.S.2d at 504 (citations omitted).

The Appellate Division's conclusion is both reasonable and fully supported by the record. The constitutional determination that the admission of his prior testimony did not violate Miller's right against self-incrimination was not contrary to *Harrison* because the appellate court correctly identified the principles announced in that case and applied them to the facts of Miller's case. Miller is thus not entitled to relief on this ground.

b.    *Sandoval* error

Miller additionally argues that the trial court erred during the second trial by modifying its *Sandoval* ruling from the first trial. Prior to both trials, the prosecution requested permission to question Miller, in the event he testified, about a prior conviction for second-degree attempted

robbery where Miller had struck the victim with a semi-automatic pistol and stolen $150 from her. During the first trial, the court ruled that the People were permitted to ask Miller if he had previously been convicted of a felony, but were not able to inquire as to the nature of the conviction or the underlying facts. At the second trial, after the court and the parties were apparently unable to remember the court's oral ruling from the first trial, the court ruled that the People could inquire into the conviction by asking whether Miller had been convicted of second-degree robbery and whether he had forcibly stolen money from another person, but could not mention the presence of a pistol.

The Appellate Division rejected Miller's claim on direct appeal, finding that, in line with New York state case law, "[t]he court's ruling followed proper *Sandoval* analysis and was within its discretion." *Miller*, 987 N.Y.S. 2d at 504. This Court is bound by the state court's interpretation of New York state law. *Bradshaw*, 546 U.S. at 76.

Moreover, an evidentiary ruling is only redressable in a federal habeas corpus proceeding if the petitioner shows an error "of constitutional dimension" that deprived him of "fundamental fairness." *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988).[2] Even if this Court assumes that the court's *Sandoval* ruling constituted evidentiary error, Miller cannot demonstrate that he was denied a fundamentally fair trial. In order for erroneously admitted evidence to have denied a defendant a fundamentally fair trial, the evidence must be "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record

---

[2]    Because Miller testified at trial, his *Sandoval* claim is cognizable on federal habeas review. *See Wilson v. Heath*, 938 F. Supp. 2d 278, 287 (N.D.N.Y. 2013) (noting that "*Sandoval* claims are barred from habeas review where . . . the petitioner failed to actually take the stand and testify at trial")); *Ponder v. Conway*, 748 F. Supp. 2d 183, 194 (W.D.N.Y. 2010) (citing *Luce v. United States*, 469 U.S. 38, 48 (1984)).

without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985). "In short, it must have been crucial, critical, highly significant." *Id.* (citation and internal quotation remarks omitted). Here, the People's use on cross-examination of Miller's prior conviction was of minimal importance in light of the overwhelming evidence against him.[3] Moreover, as the Appellate Division noted, the record supports that the trial court properly weighed competing concerns and limited the scope of permissible questioning even in its second trial ruling. Accordingly, Miller is not entitled to relief on his *Sandoval* claim either.

   iii. *Instructional Error* (Ground 3)

   Finally, Miller avers that the trial court erred in failing to timely admonish the jurors not to research Miller's case on the internet. The record reflects that, before the jury heard any testimony, the court instructed the jurors that they "may not read or listen to any accounts or discussions of the case reported by newspapers or other news media." At the end of the third day of the second trial, the county court specifically instructed the jury that they were not to use the internet to research anything about the trial. Miller argues that the court's failure to specifically instruct the jury with regards to the internet at the beginning of trial violated his right to a fair trial.

---

   [3] Other courts have admonished that harmless error review, which is similar to the determination of whether a petitioner was deprived a fundamentally fair trial, should not be confused with the sufficiency of the evidence inquiry required under *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *See, e.g.*, *Jensen v. Clements*, 800 F.3d 892, 902 (7th Cir. Sept. 8, 2015) ("Time and time again, the Supreme Court has emphasized that a harmless-error inquiry is not the same as a review for whether there was sufficient evidence at trial to support a verdict."). The Court's reliance on the overwhelming evidence against Miller in finding that he was not deprived of a fair trial does not simply focus on the sufficiency of the other evidence, but rather properly "look[s] at the influence the improperly admitted [evidence] had on the verdict," in light of a "host of factors," including the overall strength of the prosecution's case. *Id.* at 904 (citations omitted).

The propriety of a state court's jury instructions is ordinarily a matter of state law and does not raise a federal constitutional questions.  *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *Estelle*, 502 U.S. at 68.  A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well established that not only must the challenged instruction be erroneous, it must also violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record.  *Estelle*, 502 U.S. at 72.  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.  *Id.* at 72-73.  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."  *Id.*  Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law.  *See*

19

*Henderson*, 431 U.S. at 155.  In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process."  *See id.* at 156-57; *Estelle*, 502 U.S. at 72.

In this case, Miller's claim is procedurally barred from federal review.  The Appellate Division's holding that Miller failed to preserve his instructional error claim for appellate review bars federal habeas review here.  "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim."  *Harris*, 489 U.S. at 262.  In finding this claim unpreserved for appellate review, the Appellate Division relied upon New York's contemporaneous objection rule, New York CPL § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas review.  *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011).  New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error."  *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995).  As Miller did not object before the trial court to the delay in the instruction's provision, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and that claim is denied on that basis.  Moreover, the Appellate Division's alternative holding that "Supreme Court gave admonitions nearly verbatim to those required by the relevant statute" is both reasonable and fully supported by the record. Miller fails to show that the timing and content of the jury instructions on prohibition of outside research deprived him of a fair trial.  Miller is thus not entitled to relief on his instructional error claim.

V. CONCLUSION

Miller is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); 2D Cir. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 12, 2018.

                                            /s/ James K. Singleton, Jr.
                                        JAMES K. SINGLETON, JR.
                                        Senior United States District Judge